IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KIMBERLY KIMBLE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-02135-P-BK |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

This case has been referred to the undersigned for Findings, Conclusions, and Recommendation on Plaintiff's *Motion for Summary Judgment* (Doc. 15) and Defendant's *Motion for Summary Judgment* (Doc. 17). For the reasons that follow, it is recommended that Defendant's *Motion for Summary Judgment* be **GRANTED**, Plaintiff's *Motion for Summary Judgment* be **DENIED**, and the Commissioner's decision be **AFFIRMED**.

### I. BACKGROUND[1]

**A.     Procedural History**

Kimberly Kimble seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. In March 2007, Plaintiff filed for SSI and DIB, claiming that she had been disabled since July 2006 due to a right wrist disorder, left knee injury, affective mood disorder, and depression. (Tr. at 45, 60-62, 179). Her application was denied initially and on reconsideration, and Plaintiff timely requested a hearing

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

before an Administrative Law Judge ("ALJ"). (Tr. at 14, 64-67, 72-75). She personally appeared and testified at a hearing held in December 2008. (Tr. at 28-58). In March 2009, the ALJ issued her decision finding Plaintiff not disabled. (Tr. at 25). In August 2010, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. (Tr. at 1-3, 7). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g).

**B.     Factual History**

    **1.     Age, Education, and Work Experience**

Plaintiff was 34 years old at the time of her alleged onset date. (Tr. at 23). She has a high school education, some vocational training, and past relevant work as a medical records clerk, an office clerk, and a city bus driver. (Tr. at 23, 47-48, 134, 139).

    **2.     Medical Evidence**

In June 2003, Plaintiff suffered a work-related left knee injury, and an MRI revealed that she had a torn ligament and torn posterior meniscus for which she underwent ligament repair surgery in September 2003. (Tr. at 329, 661). Following the surgery, she attended physical therapy for several months and obtained a brace. (Tr. at 661). By November 2004, her strength in her lower extremities was rated as five out of five, her knee flexion and extension was normal, and her gait was normal. (Tr. at 680). In May 2005, she complained of pain in the left knee after working all day. (Tr. at 692). Plaintiff stated that her knee was tender and shifted on her sometimes, and the doctor noted that she had a positive patellar grind and diagnosed her with another torn ligament. (Tr. at 692). Plaintiff decided to continue with her current management of the condition and start a walking program to strengthen her knee. (Tr. at 692).

In 2005, Plaintiff had carpal tunnel release surgery, wrist arthroscopic surgery, and ligament repair, stemming from a work-related injury she sustained to her right (dominant) hand in October 2004. (Tr. at 324). She was cleared for post-surgical therapy in February 2006, and at that time her strength in the wrist was rated as three out of five. (Tr. at 324). In March 2006, Plaintiff was still not at maximum medical improvement, so she was not cleared to return to work a full shift, and she was ultimately terminated from her job as a bus driver. (Tr. at 414, 416, 421). She was attending physical therapy three times a week and had significant range of motion deficits in her right hand and wrist. (Tr. at 374-75). In September and December 2006, she exhibited decreased grip strength in her right hand. (Tr. at 420). In October 2006, Plaintiff stated that she was depressed due to her injury, and she was diagnosed with mild depression and moderate anxiety. (Tr. at 424). She stated that her pain was generally five on a scale of one to ten, her hand and arm were weak, and an examination revealed that she had decreased range of motion in her wrist. (Tr. at 427). A physical therapist opined in October 2006 that Plaintiff could perform sedentary work. (Tr. at 431).

A psychologist who examined Plaintiff in November 2006 stated that she was depressed and, while she could benefit from vocational training, she would not function well in a highly stressful environment. (Tr. at 451-52). Plaintiff underwent a career assessment evaluation in December 2006, and the vocational rehabilitation consultant noted that she had previous experience doing office work, dispatching, and customer service, and those skills were transferable as long as her keyboarding was limited and she did not have to engage in repetitive motion. (Tr. at 454, 459).

In April 2007, a state agency medical consultant filled out a physical residual functional

3

capacity ("RFC") form for Plaintiff, and opined that she could occasionally lift and carry 20 pounds, frequently lift ten pounds, occasionally climb ramps and stairs, and occasionally kneel and crawl, but she could not climb ladders, ropes or scaffolds. (Tr. at 621-22). Plaintiff also was limited to occasionally handling and fingering objects. (Tr. at 623). Another state medical consultant found in June 2007 that Plaintiff was depressed and was mildly limited in her activities of daily living and moderately limited in maintaining social functioning, concentration, persistence, and pace. (Tr. at 634, 641). Further, she was markedly limited in her ability to remember and carry out detailed instructions. (Tr. at 646). Plaintiff affirmed that she did housework, cooked, volunteered at her children's school, helped with their homework, attended church, drove, and went to movies and family picnics. (Tr. at 643). Her treating psychologist, whom Plaintiff saw for two months, indicated that Plaintiff was not willing to work for less pay than her job as a bus driver and had an attitude of entitlement. (Tr. at 652).

In September 2007, Dr. Lige Rushing performed a consultative examination of Plaintiff and noted that her left knee x-ray was normal, although Plaintiff complained that it gave out on her while she walked. (Tr. at 654-55). Dr. Rushing reported that Plaintiff's right upper arm was normal, but her grip strength was decreased by approximately 50 percent, flexion was limited at 15 degrees, and she had no atrophy. (Tr. at 655). Dr. Rushing found that Plaintiff had no substantial impairment of her knee regarding lifting, walking, pushing, pulling, standing, or moving. (Tr. at 656). Dr. Rushing assessed Plaintiff's right hand as having fairly mild impairment, and her ability to do heavy manual lifting and pulling was moderately impaired. (Tr. at 656).

4

### 3. Hearing Testimony

At the administrative hearing, Plaintiff appeared *pro se*, and the ALJ stated that she needed to discuss with Plaintiff her right to representation. (Tr. at 29). The ALJ noted that Plaintiff had been sent a letter advising her of her right to representation, giving her the phone numbers of various groups that might be able to assist her, and notifying her that she might be entitled to free legal services; Plaintiff stated that she had received the letter. (Tr. at 29). The ALJ then read to Plaintiff a detailed statement that advised her that she had the right to representation by someone who could assist her with presentation and gathering of evidence and protect her rights, she might qualify for free representation, and if she chose not to obtain representation, the ALJ would question her at the hearing. (Tr. at 29-30). Plaintiff said she understood and wanted to proceed without representation. (Tr. at 30). Next, the ALJ explained to Plaintiff the issues that the ALJ would be deciding in the case and the legal requirements that Plaintiff would have to meet to qualify for benefits, and Plaintiff indicated that she understood. (Tr. at 33-35).

Plaintiff testified that she was still seeking medical treatment for her right hand, for which she wore a brace, because it was weak, painful, and had a limited range of motion. (Tr. at 42, 44). She could write for short periods of time, but could not type for ten minutes continuously. (Tr. at 43-44). Plaintiff said that she also had problems with her left knee, which shifted due to bone loss, and also clicked and made a grinding sound. (Tr. at 45-46). She noted that her depression began when she lost her job, but had improved somewhat since she started going to community college full time. (Tr. at 36-37, 47, 49).

A vocational expert ("VE") testified that a hypothetical individual with Plaintiff's history

5

who could (1) lift/carry 20 pounds occasionally and ten pounds frequently, (2) stand/walk for six hours, (3) sit for six hours, (4) occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, (5) occasionally push/pull, handle and finger with the right arm, and (6) have occasional contact with other people, could not perform Plaintiff's past work. (Tr. at 52-53). However, the VE testified that such an individual could be an addresser, which is sedentary, unskilled work, and there were 1,400 such jobs in the state. (Tr. at 55). That person also could work as a cutter/paster of press clippings, which was sedentary unskilled work, with 1,600 jobs locally. (Tr. at 55). Finally, the VE stated that the hypothetical individual also could be a surveillance system monitor, which is sedentary unskilled work, with 500 jobs available in the state. (Tr. at 55).

C. **ALJ's Findings**

The ALJ found that Plaintiff had the severe impairments of depression, left knee injury, right wrist injury, and carpal tunnel syndrome, but she did not have an impairment or combination thereof that met or medically equaled one of the Listings. (Tr. at 17). Next, the ALJ determined that Plaintiff could (1) lift/carry 20 pounds occasionally and ten pounds frequently, (2) stand/walk for six hours, (3) sit for six hours, (4) occasionally climb ramps and stairs, (5) occasionally balance, stoop, kneel, crouch, and crawl, (6) occasionally push/pull, handle and finger with the right arm, and (7) have occasional contact with other people. (Tr. at 19). The ALJ concluded that, based on the VE's testimony, Plaintiff could not perform her prior work, but she could work as an addresser, cutter/paster, and surveillance system monitor. (Tr. at 24).

## II. ANALYSIS

A. <u>**Legal Standards**</u>

    1. **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

    2. **Disability Determination**

The definition of disability under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Pursuant to 20 C.F.R. § 404.1520(d), if a claimant has an impairment which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment, Plaintiff is deemed disabled

without consideration of age, education, and work experience.

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)). Under the first four steps of the analysis, the burden of proof lies with Plaintiff to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that Plaintiff is disabled or is not disabled. *Id.* Once Plaintiff satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that Plaintiff is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

B.     **Issues for Review**

    1.     **Whether the ALJ Properly Obtained Plaintiff's Waiver of Counsel**

Plaintiff contends that she did not understand the significance of her waiver of counsel, as evidenced by her questions when the ALJ asked whether she had any objections to the VE's testimony. (Doc. 15 at 9-11). The government responds that, in addition to receiving detailed information about the role and availability of counsel from the ALJ, Plaintiff also received four written notices fully explaining her right to counsel and, thereby, knowingly waived representation. (Doc. 18 at 6-8).

A claimant has a statutory right to have counsel present at an administrative hearing regarding disability benefits. *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003). However, a claimant may waive that right if she receives adequate notice of the scope of the right. *See Brock v. Chater*, 84 F.3d 726, 729 n. 1 (5th Cir. 1996). The Fifth Circuit has held that a claimant received adequate notice when she got verbal notification from the ALJ as well as four written notices, one of which contained a list of organizations she could contact for representation. The notices contained information about, *inter alia*, the type of assistance an attorney could provide and the possibility that the claimant could obtain either free or contingency-fee representation. *Castillo*, 325 F.3d at 552 n.4. The degree of notice that Plaintiff received in this case was essentially the same as that which the claimant in the *Castillo* case received; in fact, the verbal explanation the ALJ provided to Plaintiff was far more detailed than the explanation Castillo received. Accordingly, Plaintiff's *Motion for Summary Judgment* should be denied on this point.

### 2.     Whether the ALJ's Finding that Plaintiff Can Perform Other Work is Supported by Substantial Evidence

Plaintiff urges that the ALJ gave a hypothetical RFC to the VE limiting the claimant to occasional handling and fingering with the dominant right hand, but the VE testified that Plaintiff could perform the jobs of cutter/paster and addresser, which require frequent handling and fingering. (Doc. 15 at 12). Further, Plaintiff claims, the ALJ did not obtain an explanation for the discrepancy or a statement from the VE that his testimony was consistent with the DOT job descriptions. (*Id.*). As to the job of surveillance system monitor, Plaintiff contends that it is in direct conflict with the DOT description of the reading, math, and language requirements for that job, and the number of such jobs in the regional economy is not sufficient to support a finding that there are a significant number available. (*Id.*).

Defendant contends that the ALJ's hypothetical question clearly limited Plaintiff to occasional handling and fingering with the right hand, and the vocational expert still stated that Plaintiff could perform the jobs of addresser and cutter/paster. (Doc. 18 at 9). Defendant urges the Court to recognize that the VE, who has degrees at the master's and doctoral level and over 35 years of experience, is familiar with the specific skills required for particular jobs. Accordingly, Defendant urges, it was proper for the ALJ to believe Plaintiff could work as an addresser or cutter/paster despite a limitation to only occasional handling and fingering. (*Id.*). Next, Defendant contends that Plaintiff's argument that the ALJ failed to explain the meaning of reading, math, and language restrictions at the hearing is moot because the ALJ limited her to unskilled jobs. (*Id.* at 10). Finally, Defendant maintains that Plaintiff's argument about the low number of surveillance system monitor jobs is meritless because she can work as an addresser

and cutter/paster and, in any event, 500 is a significant number of jobs. (*Id.* at 10-11). Plaintiff reiterates her arguments in her reply brief. (Doc. 23).

When a VE provides evidence about the requirements of a job, the ALJ must (1) ask the VE if the evidence he has provided conflicts with information provided in the DOT; and (2) if the VE's evidence appears to conflict with the DOT, the ALJ must obtain a reasonable explanation for the apparent conflict. SSR 00-4p, 2000 WL 1898704, at *4 (S.S.A. Dec. 4, 2000). Nevertheless, "[p]rocedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Indeed, to the extent that there is any implied or indirect conflict between a VE's testimony and the DOT, the ALJ may rely upon the VE's testimony if the record reflects an adequate basis for doing so. *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). This is so because all manner of implicit conflicts are possible, and the categorical requirements listed in the DOT cannot satisfactorily answer every possible factual scenario.[2] *Id.*

According to the DOT job description, an addresser "[a]ddresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing. May sort mail." DOT 209.587-010. This position involves frequent reaching, handling, and fingering, which means 1/3 to 2/3 of the time. *Id.*, 1991 WL 671797 (G.P.O. 1991) (noting physical demands). The job of cutter/paster is described as one who "[t]ears or cuts out marked articles or

---

[2] Although Plaintiff attempts to distinguish *Carey* on the basis that the claimant in that case was represented by counsel, that was not the central basis for the Court's ruling. *See Carey*, 230 F.3d 131, 146-47. All that is required is that a claimant be given the opportunity to cross-examine the VE, which Plaintiff was given. *Lidy v. Sullivan*, 911 F.2d 1075, 1077 (5th Cir. 1990) (holding that due process requires that a claimant be given the opportunity to cross-examine a physician); (Tr. at 56-57) (ALJ inquiring of Plaintiff whether she had any questions about the VE's testimony and whether she wanted to ask the VE any questions).

advertisements from newspapers and magazines, using knife or scissors. Records name of publication, page and location, date, and name of customer on label, and affixes label to clipping." DOT 249.587-014. This job requires the ability to reach and handle frequently and finger occasionally (up to 1/3 of the time). *Id.*, 1991 WL 672348 (G.P.O. 1991) (noting physical demands). The VE's testimony thus placed the ALJ's RFC finding in conflict with the specific skills the DOT lists for the jobs of addresser and cutter/paster. *See Carey*, 230 F.3d 131, 144 n.2, 146 (noting that "indirect conflict" with DOT provisions occurs when a VE's testimony places the ALJ's RFC finding in conflict with the exertional or skill level required for the identified jobs in the DOT).

Nevertheless, substantial evidence supports the ALJ's decision to rely on the VE's testimony because the record reflects an adequate basis for doing so. *Id.* at 146; *see also Mays*, 837 F.2d at 1364 (noting that even if the ALJ commits a procedural error, such error is harmless if the claimant's rights were not substantially affected). Plaintiff herself testified that she engages in many activities of daily living, such as doing housework, cooking, volunteering at her children's school, helping with their homework, attending church, driving, and going to movies and family picnics. (Tr. at 643). This testimony undermines her claim of disability. She also stated that she could write for short periods of time (although she could not type for ten minutes continuously), which would not appear to preclude her ability to work as an addresser or cutter/paster. (Tr. at 43-44). The Court's finding is further supported by the testimony of Plaintiff's physical therapist who opined that Plaintiff could do sedentary work. (Tr. at 431). Moreover, while one consulting physician found that Plaintiff was limited to handling and fingering objects only occasionally, another consulting physician found that the impairment to

12

her hand was quite mild. (Tr. at 623, 656). In applying the substantial evidence standard, the undersigned cannot reweigh the evidence. *Greenspan*, 38 F.3d at 236. Accordingly, Defendant is entitled to summary judgment as to this claim as well. The Court need not address Plaintiff's arguments about the surveillance monitor job because substantial evidence supports the ALJ's decision that Plaintiff can work as an addresser or cutter/paster.

### III. CONCLUSION

For the foregoing reasons, the undersigned recommends that Plaintiff's *Motion for Summary Judgment* (Doc. 15) be **DENIED**, Defendant's *Motion for Summary Judgment* (Doc. 17) be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

**SO RECOMMENDED on** December 14, 2011.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE